IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ROBERT KENNEDY, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> COMMONWEALTH OF ) <br> PENNSYLVANIA, ) <br> ) <br> Respondent. ) | Civil Action No. 2:21-cv-538 <br><br> Magistrate Judge Patricia L. Dodge |

**MEMORANDUM ORDER**

State prisoner David Robert Kennedy ("Petitioner") recently filed with this Court his third petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 9.) For the reasons that follow, the Court will transfer it to the United States Court of Appeals for the Third Circuit for consideration as an application to file a second or successive habeas petition.

**I.      MEMORANDUM**

   **A.  Relevant Background**

Petitioner is serving a life sentence imposed on November 5, 2001 by the Court of Common Pleas of Allegheny County at docket number CP-02-CR-571-2001 on a conviction of first-degree murder. In the 2007 decision issued by the Superior Court of Pennsylvania in Petitioner's direct appeal, it provided the following background:

> This case involves the March 17, 1977 disappearance of Debbie Capiola, of Findlay Township, a seventeen-year-old high school student. The case remained unsolved for many years. Debbie left her home on a back road in Findlay Township at about 7:45 a.m. that morning to walk to the bus stop. Her brother, who usually accompanied her, stayed home that day because he was sick. The school bus driver, Helen Kennedy, testified that Debbie was not at the bus stop at 8:02 a.m., when the bus arrived to pick her up. Kathleen Juip, Debbie's mother, stated that she left her residence at about 8:10 a.m. As she was driving down the road, she saw her daughter's books and her nurse's smock on the side of the road. Thinking that

Debbie had dropped them running for the bus, Ms. Juip picked up the items and took them to the high school. The school secretary paged Debbie, but she did not respond and Ms. Juip knew that something was wrong. She contacted the police and the search for Debbie began. Eight days later on March 25, 1977, Debbie's purse, containing her wallet and her shoes were found near Blue Lake in a remote area of Washington County. Her jeans were tied around her neck, there were buttons missing from her blouse, and her bra was torn.

[Petitioner], who drove a car similar to a vehicle that had been observed in the area by several witnesses, was interviewed on March 31, 1977. [Petitioner's] license plate matched the partial plate numbers that had been provided to the police. [Petitioner] denied any involvement with the murder.

An autopsy was performed by Dr. Ernest Abernathy, who is now deceased. The autopsy protocol and the autopsy photographs were reviewed by Dr. Leon Rozin. Dr. Rozin opined that the cause of death was ligature strangulation. There was no trauma to the victim's vagina, cervix, or rectum, but the oral cavity smear was positive for spermatozoa.

Several criminologists examined the swab samples taken from Ms. Capiola and her clothing. Spermatozoa and a small stain of blood were found on the jeans and spermatozoa was...found on the oral slides.

From 1977 to 1999, this unsolved case was investigated by many members of the Pennsylvania State Police, but no suspect was charged. In 1999, Trooper Rebecca Loving reviewed the case and wondered if the spermatozoa that was...found could be tested for DNA. In May 2000, Trooper Loving shipped Ms. Capiola's jeans and the oral slides to Cellmark Laboratory, along with the autopsy report and criminologists' reports. The following month she learned that Cellmark had a profile from the jeans and that further testing could be done. On November 3, 2000, the police obtained a search warrant for [Petitioner's] blood. The blood was taken to Cellmark on November 8, 2000. Based on the results, [Petitioner] was arrested on December 14, 2000 and charged with homicide.

Kathryn Colombo, a laboratory analyst with Cellmark Diagnostics in Maryland, testified that Cellmark is a private laboratory engaged in DNA identification testing in criminal cases. She stated that she examined the victim's jeans and obtained a DNA profile from the sperm that she found on the jeans. When she received [Petitioner's] blood sample a few months later, she extracted DNA from the blood. The DNA profile from the jeans was exactly the same as the DNA profile from the [Petitioner's] blood. She indicated that there is a 1 in 1.4 trillion chance that someone else's DNA would be the same as [Petitioner's] DNA. In her opinion, with a reasonable degree of scientific certainty, "the donor of the DNA obtained from the blood sample labeled [Petitioner's] is the source of the DNA obtained from the sperm fraction on the jeans."

With the preceding evidence in hand, the jury found [Petitioner] guilty of first-degree murder and a sentence of life imprisonment without the possibility of parole was imposed.

(*Commonwealth v. Kennedy*, No. 2221 WDA 2005, slip op. at pp. 1-3 (Pa. Super. Ct. Feb. 26, 2007) (internal citations and quotations omitted), available at ECF No. 12-7 at pp. 1-3 in *Kennedy v. Lamas, et al.*, No. 2:-11-cv-542 (W.D. Pa.)).

In his direct appeal to the Superior Court, Petitioner argued that the trial court erred when it: (1) denied the defense's motion to suppress, thereby allowing the admission of the alleged tainted testimony of Commonwealth witness Ruth Beck; (2) refused to permit the admission of a Pennsylvania State Police report which contained the statement of William Miller, who was deceased at the time of trial; (3) did not dismiss the charges against him, which he asserted were improper and unreasonable because of the twenty-three-year delay in his arrest; and (4) permitted Dr. Rozin to provide a medical opinion as to the cause of death. (*Id.* at pp. 3-20.)

On February 26, 2007, the Superior Court denied each of Petitioner's claims and affirmed his judgment of sentence. (*Id.*) The Pennsylvania Supreme Court denied a petition for allowance of appeal on December 31, 2008.

In February 2009, Petitioner filed a motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541. He argued that his trial counsel was ineffective for failing to preserve the claim that the trial court erred in allowing the expert testimony of Dr. Rozin. The trial court (now the PCRA court) denied Petitioner's claims for relief. The Superior Court affirmed in *Commonwealth v. Kennedy*, No. 795 WDA 2009, slip op. (Pa. Super. Ct. Dec. 18, 2009), available at ECF No. 13-10 at pp. 1-10 in *Kennedy*, No. 2:-11-cv-542 (W.D. Pa.).

In 2003, Petitioner filed with this Court his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. That habeas case was docketed at *Kennedy v. Lamas, et al.*, No. 2:11-cv-542 (W.D. Pa.). Petitioner claimed:

>A. The trial court violated his right to due process when it permitted the Commonwealth to introduce the testimony of Ruth Beck;
>
>B. The trial court violated Petitioner's rights under the Sixth And Fourteenth Amendments when it refused to admit the police report containing the statement of William Miller; and
>
>C. Petitioner was denied his Constitutional rights protected under the Fifth, Sixth and Fourteenth Amendments by the Commonwealth's inordinate delay in arresting him.

(ECF No. 1 in *Kennedy,* No. 2:11-cv-542, attached as Exhibit A.)

This Court dismissed Plaintiff's habeas petition in a Memorandum issued on June 22, 2011. (ECF No. 15 in *Kennedy*, No. 2:11-cv-542, attached as Exhibit B.) The Court of Appeals denied Petitioner's subsequent application of a certificate of appealability. (ECF No. 21 in *Kennedy*, No. 2:11-cv-542.)

In 2015, Petitioner commenced a second habeas case with this Court at *Kennedy v. Commonwealth, et al.*, No. 2: 15-cv-1041 (W.D. Pa.). Petitioner raised numerous grounds for relief in the habeas petition he filed in that case, including that the Commonwealth violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* ECF No. 3 in *Kennedy*, No. 2:15-cv-1041, attached as Exhibit C; *see also id.* at pp. 49-85.) This Court transferred Petitioner's 2015 habeas petition to the Court of Appeals because it was a "second or successive habeas" and thus, in accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as codified in relevant part at 28 U.S.C. § 2244(b), Petitioner required authorization from the Court of Appeals before he could litigate it in this Court. (ECF No. 6 in *Kennedy*, No. 2: 15-cv-1041, attached as Exhibit D.)

The Court of Appeals denied Petitioner authorization to file his second federal habeas petition, concluding that he did not show that he relied on either "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable," 28 U.S.C. § 2244(b)(2)(A), or newly discovered evidence that "could not have been discovered previously through the exercise of due diligence" and which would show that no reasonable factfinder would have found him guilty, *id.*, § 2244(b)(2)(B). (ECF No. 7 in *Kennedy*, No. 2: 15-cv-1041.)

Since that time Petitioner has continued to challenge his judgment of sentence in state court. He filed his most recent PCRA motion in February 2018. He claimed: (1) his trial counsel was ineffective; (2) "*Brady* violations where the prosecution suppressed exculpatory information from witnesses"; (3) "*Brady* violations where the prosecution used false testimony and evidence at trial"; (4) "prejudicial closing argument by the prosecutor"; and (5) the existence of "new evidence" that would have changed the outcome of trial. *See Commonwealth v. Kennedy*, No. 1056 WDA 2018, 2019 WL 1011135, *1 (Pa. Super. Ct. Mar. 4, 2019) (summarizing the claims Petitioner raised in his Feb. 2018 PCRA motion).

The PCRA court found that Petitioner's claims were time barred under the state's one-year statute of limitations at 42 Pa. Cons. Stat. § 9545(b)(3). The Superior Court affirmed the PCRA court's decision in a decision it issued on March 4, 2019. *Id.* at *1-2. The Pennsylvania Supreme Court denied a petition for allowance of appeal on November 6, 2019. *Commonwealth v. Kennedy*, 219 A.3d 602 (Pa. 2019).

Petitioner recently initiated the instant federal habeas case. He once again seeks to litigate claims challenging his November 5, 2001 judgment of sentence. In his petition (ECF No. 9)—which is his third federal habeas petition—he claims: (1) the prosecution "effectively suppressed exculpatory depositions of ten (10) deceased witnesses"; (2) the prosecution knowingly introduced false testimony; (3) his trial counsel was ineffective for failing to "provide meaningful adversarial

5

testing of the prosecution's key witnesses"; and (4) his trial counsel was ineffective for failing to present testimony from the expert witness retained by the defense. (*Id.* at pp. 5-10.)

A review of the Court of Appeals' docket reflects that Petitioner has not filed with it an application to file the instant petition for a writ of habeas corpus.

B. **Discussion**

AEDPA mandates that before a state prisoner may file a second or successive habeas petition in which he challenges a judgment of sentence that he previously challenged in a federal habeas action, he must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3). *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 330-31 (2010); *United States v. Winkeman*, 746 F.3d 134, 135 (3d Cir. 2014); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam). AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals has divested district courts of jurisdiction over second or successive habeas applications. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147 (2007).

There is no question that the petition filed here is "second or successive" and that Petitioner requires authorization from the Court of Appeals to litigate it in this Court. When presented with a "second or successive" habeas petition, district courts within the Third Circuit may either dismiss the petition for lack of subject-matter jurisdiction or transfer it to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consideration as an application to file a second or successive petition. *Robinson v. Johnson*, 313 F.3d 128, 129 (3d Cir. 2002). This Court chooses the latter option and will transfer the petition to the Court of Appeals.

Petitioner is advised that once a state prisoner moves for authorization to file a second or successive petition, a three-judge panel of the Court of Appeals must decide whether there is a *prima facie* showing that the application satisfies § 2244's substantive requirements, which are set

6

forth in § 2244(b). *See* 28 U.S.C. § 2244(b)(3)(C). Petitioner is also advised that Rule 22.5(h)(i) of the Court of Appeals' Local Appellate Rules provides that where, as is the case here, a petition "[is] transferred by the district court [and it] does not contain a statement by the applicant as to how the standards of § 2244(b)…are satisfied, the clerk [for the Court of Appeals] may direct the applicant to file a memorandum clearly stating how the statutory standards are met. Failure to file a memorandum as directed will result in the dismissal of the case by the clerk without further notice."

**II.     ORDER**

Based on the foregoing, the Clerk of Court shall transfer the petition (ECF No. 9) to the Court of Appeals for consideration as an application to file a second or successive habeas petition.

So ORDERED this 7th day of July, 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

cc by first class mail to:

David R. Kennedy
GK9993
SCI Fayette
50 Overlook Drive
LaBelle, PA 15450

Pennsylvania Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

Allegheny County District Attorney's Office
Room 303 Courthouse
436 Grant Street
Pittsburgh, PA 15219